Good morning, Your Honor. May it please the court, my name is Roger Green. I'm representing the petitioner. The petitioner presents this case before this court because the petitioner believes he has established membership in a particular social group. And his case has distinguished itself from the reasoning used by the agency, by the board, in their denial decision. And therein lies part of the problem. When the case is presented, the case, his group was presented. It was supposed to be considered and decided, but it wasn't fully, meaningfully explained. If we look at that decision of the BIA, it gives a generalized, a generalized analysis using SEG and this Court's case of Ramos-Lopez and Santos-Limas. Those cases deal with gang recruitment. Now, this case — Kennedy, Jr. Let me ask you one question at the beginning. In one of the two cases released on Friday, when they talked about gang activity or things, I believe, they said it really has to be decided case-by-case basis. Do you think that requires a remand to the BIA to reconsider this case in light of the two cases they just issued? I think it does, Your Honor. The board itself has had a long tradition of advocating for a case-by-case basis. It did so from ACOSTA, and it's done so from W — the new case from the board of WGR. It says that every case before the board will precisely be given this case-by-case determination. Instead, what's happening here is a generalized approach, talking about generalized violence. That may have been the case in considering the facts. He — this Petitioner actually was the subject of gang recruitment. The administrative record, I believe it's on page 126, before he helped his brother try to leave the gangs, there's testimony which indicates he was himself recruited by the gang, and he told them no. But I thought the whole focus of the argument was that he advised his brother to leave and, in fact, encouraged the brother to leave. It wasn't focused upon his rejection of the gang, was it? You're right, Your Honor. That — the case was not based on that. And I bring that before the Court to describe what this case isn't. And the reasoning by the board is of a case that would align in that genre if it was a gang recruitment case. This case is more. This case is where he took — he is, as the immigration judge, who found that he did satisfy membership in a particular social group. The immigration judge did make that finding, that he is part of those in direct opposition to the gang who took specific action. And that's a clear demarcation from people that are subject to gang — simple gang. I don't want to say simple, but people that are subject to gang recruitment. In that sense, he demarcates himself from being a beleaguered victim to somebody who takes a position, rejects the gangs, and says, I would — I'm going to — here I stand. I will make a stand. I will do something against the gangs. And the immigration judge found that. And the immigration judge used the country conditions. The immigration judge used his testimony. The facts, as the BIA indicates, the facts aren't in dispute. And what's troubling about the board's decision is it doesn't go into this analysis of these things. Well, why don't you go through the three elements as defined by the two recent board decisions. In other words, mutability, particularity, and social distinction, based on the facts in this record, and explain to us why you think your description of this social group fits within the BIA's reformulated analysis. Well, in terms of immutability, using my raw impressions of WGR, I would say the mutability component is satisfied based upon its — it's not just a shared past experience, but it's — and Sanchez-Trujillo speaks about a common impulse. It's something that can't be changed, nor should be required to change. So that's the first part, immutability. The second part, in terms of social — well, let me go to particularity. The group can be described by the society and understood to be a specific group. Here, the society would, in this manner, in terms of particularity, the society could say, well, who is for — who's a victim? Can anyone — to use a term, can anyone give us any reprieve from these troublesome gangs? I thought J.D. Sessions was asking you whether you were describing this group as people who had actively opposed the gang in a manner that was different from those who just were just non-gang members or possible victims. But I thought he was asking you about whether this was not somebody who had actually opposed the gang in their presence by asking his brother to resign from the gang, and that that was a form of opposition that may have differentiated your client from the ordinary person who was just not a gang member, didn't like the gangs, refused to join the gangs, that somehow this distinguished your client and put him in a particular group. Yes, Your Honor. And that's — that's exactly the reasoning posited by the immigration judge when she granted the case. And this is — again, this is not the generalized analysis. This was not the analysis used by the board in its decision, however. The decision made by the board was the same as if it had stopped. I was describing earlier that he had been the subject of gang recruitment. The analysis used by the board was as if he was simply recruited, because it's using the same case basis of SEG. In fact, part of the lines are straight from the case of SEG. I mean, it's verbatim in terms of its analysis, but this case presents more. Can I get you back to Judge Thomas's comments? In reading these new opinions, which just came out from BIA, I had some questions about what they exactly meant. The difference between social distinction and social visibility, is that a distinction — I shouldn't use distinction — is that a difference which suggests that really this should be sent back just on its face? And they also talk about society, the relevant society. And, of course, the Ninth Circuit had said you look to the persecutor, at least suggested that you should look to the persecutor. What does it mean, society in question, in that opinion? Your Honor, if I can just note, I'd like to reserve at least one minute of rebuttal time. Okay, we'll give you a minute and a half. Thank you. But I believe that the social distinction, it — well, for one thing, it doesn't — it's clear when it says we do not rely on the ocular requirement. But we do — the social distinction is how the group is perceived, the perception. It goes — it talks about the perception of society. And it goes into how the — its view from the society's standpoint. It should be the ocular requirement. Society meaning all of society, or society meaning particular societies based upon the individual circumstances of a case? I believe — My question. Again, I believe WGR also — it also speaks about the case-by-case analysis. So in that manner, I would believe it would look at the particular case, the facts involved in the particular case, which the immigration judge did here. She looked at the country conditions. She looked at the background documents. And she cited that in terms of her decision. Thank you. Thank you, Your Honor. Good morning. May it please the Court. My name is Dawn Conrad. And I'm here today on behalf of the United States Attorney General. I would actually like to begin by addressing some of the comments you — some of the questions you gave to Petitioner's counsel. Well, maybe you can clear up two things. Yes, Your Honor. One, I understand that the board no longer likes ocularity. That's correct. Yes. That was a great step forward. The second thing is I understand that they say these matters should be decided on a case-by-case matter basis. That's correct. Other than that, how has the board clarified, rather than muddied up, what the law is in this kind of case? Well, I think they've done a few things. One, they renamed the social visibility requirements social distinction, I think, to clarify that it does not require ocular visibility. I've never heard of ocular visibility before, but I'm glad it no longer exists. That's correct. Well, there had been, as this Court pointed out in its Hernandez-Rivas decision, there was some confusion in past case law about that. Two, it made it clear that there are three separate requirements for particular social group, the immutable characteristic, the particularity, and the social distinction requirement. And which does this Petitioner not meet? He fails on particularity. And the reason for that is the board made clear in these cases that it must be defined with sufficient particularity so that there is a way to delimit the group, that it is not a case where there is a particularity requirement. Here, those in direct opposition to the gang, we have no idea about who exactly is included in this group, how much action is taken to actually oppose the gang, whether this is a very variable definition, what is meant by direct action, what kind of action qualifies, how much action is necessary. So the board would find that this case clearly doesn't meet the particularity requirement, which it already did in its decision below. And one of the things that struck me about, in particular, about MBRV was that the board said basically that the case law has evolved and it remanded, even though it was sort of a similar case to this one, it remanded to the immigration judge. And it noted here that not only case law has evolved, that there was a decision from the Third Circuit that suggested a remand was appropriate, and said, you know, we need some additional fact-finding and perhaps a reformulation of the social group definition at the IJ level. Why wouldn't we want to remand in this case? Well, I actually think this case is more similar to Matter of WGR than Matter of, I can't remember all those initials, the M. Right. Because in that case, there was a very long procedural history that actually had been remanded from the Third Circuit twice, and part of the reason the board sent it back to the IJ is the definition of Petitioner's proposed social group had changed in the course of the proceedings. I don't think we have that in this case. This case is very similar to Matter of WGR, where you have a former gang member who renounced, publicly renounced his membership and then was persecuted by, or not persecuted, but harmed by the gang. I believe they shot him after he left the gang. And the board found that this still does not meet the definition of a particular social group, even though there's certainly, this was an individual who crossed the gangs. The board, you know, I mean, gangs pursue people that cross them. But the board found that, like this case, that Petitioner's proposed social group in Matter of WGR lacks particularity because the proposed group is too diffused, too broad and subjective. So how do you distinguish the two BIA cases from our recent en banc case and Enriquez-Rivas? Obviously, the perspective of the persecutor portion of our en banc opinion is in tension with what the BIA has formulated. But otherwise, how do you see it as different? I think, I mean, I think the cases are pretty similar. I don't really think there is a lot of conflict, except with the issue of the perception of the persecutor, what perception is looked at in the social distinction analysis. But the board agreed with the Court that it is not, as Judge Reinhart likes, ocular visibility that's required, but it is visibility within the specific society in question. And the board also agreed with the Court's particularity analysis. You don't see the board returning to an analysis that the board, that the group is too diversity of lifestyle, diversity of origin. That was rejected by this Court and Enriquez-Rivas. Well, we did grant relief in that en banc opinion under circumstances that are very close to this case. So you tell me, what distinguishes the social group in our en banc decision from the social group at issue here with respect to the particularity requirement? Yes. Well, in the social group that was considered in Enriquez-Rivas was witnesses who testify publicly against gang members. And that is a very delineated group. There is a specific requirement of who qualifies for that group. The witnesses who testify at trials. Here we don't have that definition. It's a much more subjective definition, those who directly oppose gangs. Again, what type of opposition is required? How much is required? Where does it have to occur? There's many questions that make this a very subjective analysis, as opposed to witnesses who testify against gangs, a very clear delineated group. If there's no further questions, we respectfully ask the Court to deny the petition for review. Thank you. Thank you. All right. Counsel. Your Honor, on rebuttal. If I can just first address government, respectfully address government's counsel's summary, distinction of Enriquez. In Enriquez, there was a group was able to more easily be found, perhaps, because there's a difference in countries. El Salvador had a specific legislature that enacted legislation for witness protection. And this Court, I believe, en banc, in detail, described and analyzed that legislation. Guatemala doesn't have that. Guatemala, as a ---- Does that help you or hurt you that there's a specific group defined in legislation? Well ---- Doesn't that make it more particular in your case? In terms of if there was legislation, perhaps, in Guatemala similar to the case in Enriquez that said those who actively take out, those who suffer or those actually who make efforts to stop the gangs, those who get involved from the community, those who rise from the country to say, okay, let's make an effort to stop the gang, they may be afforded some protection, that would clarify. And they would say, okay, that shows country awareness. But we seem to be down to the issue of particularity. So tell me, why is your group ---- how does your group satisfy the particularity requirement? In other words, why the government complains you can't tell, you can't define the group. There are no outward boundaries of the group. So explain to me why in the record that you satisfied the particularity requirement. Well, as a threshold, I don't, as described in the matter of CA, a voluntary association is not required. But I believe that this petitioner satisfies the particularity because he can be described as those who are against the gangs. There's, again, he's on a case-by-case basis. In fact, this is very fact-intensive. And this is why I believe this case calls for remand, either before the board or especially let the immigration judge address some of these things. Where is she? Where is she deriving her conclusions based upon the country conditions? Where is she getting from the testimony that he has done something that would distinguish him that society would recognize this is different than somebody who cowers in fear? You know, I can see your argument would be stronger with Enrique's, Rivas' case, because you can pursue ---- you can actually view the social group from the perspective of the persecutor. And they clearly have identified who is opposed to the gang. But now we're talking about society in general. And does that change, going back to this new BIA decision, really hurt your case? Well, I believe that he would satisfy it. But as a threshold, I would believe that he certainly ---- given the change in case law, I believe this case was decided even before SEG. SEG transpired after this decision. And then Enrique's, Rivas' happened after that. And then WGR and NEVG occurred after that. I believe this case would benefit from renewed analysis, given that the law appears strikingly to change and evolve or manifest itself in different directions. And I believe that he should be given that benefit to have an analysis of the facts of his case, given that the law has changed in the intervening years. Thank you, counsel. Thank you, Your Honor. The case to start here will be submitted.
judges: Sessions, Reinhardt, Thomas